## HOLTMAN *v.* STATE

[No. 187, September Term, 1958.]

514

*Decided April 15, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*Sidney W. Albert* for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Norman Hochberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant was found guilty by the Criminal Court of Baltimore, sitting without a jury, of breaking into and entering the filling station of one Harry J. Van Vooren "with the intent then and there certain goods and chattels in the said filling station then and there being found, then and there feloniously to steal, take and carry away * * *." He was thereupon sentenced to six years' confinement in the Maryland House of Correction, and from this judgment and sentence he has appealed.

We shall first dispose of a preliminary question concerning the indictment and the proof required to sustain a conviction upon it. It was drawn so as to charge an offense under Code (1957), Article 27, Section 32. In order to constitute a crime under this statute, the breaking must be done with an intention "to commit murder or felony therein, or with the intent to steal, take or carry away the personal goods of another of the value of twenty-five dollars ($25.00) or more therefrom * * *." Hence when the wrongful intent relied upon by the State is that of stealing and carrying away

goods of another, a showing that such an intent was to steal and carry away property of the value of twenty-five dollars, or more, would probably suffice to satisfy the statute upon trial, if the indictment be drawn to this effect. Cf. *Felkner v. State,* 218 Md. 300, 146 A. 2d 424, 428. However, as stated above, the indictment herein charged the appellant with breaking with *an intent to commit a felony in the filling station, i.e.,* with intent feloniously to steal, take and carry away goods and chattels of another, and Sections 340 and 341 of Article 27 of the Code (1957) make the dividing line between felonious and non-felonious larceny the value of one hundred dollars; consequently, we hold that it was necessary for the State to adduce sufficient evidence or inferences from evidence that justified the trial court in concluding that the defendant, at the time of the breaking, intended to steal articles or money of the value of one hundred dollars or more.

The appellant argues that the evidence presented below was insufficient to sustain the verdict of guilty. We have repeatedly stated that upon appeals of this nature—from the trial court sitting without a jury—it is not the duty of the members of this Court to read the record and decide whether in our judgment the appellant in a criminal prosecution has been proved guilty beyond a reasonable doubt. The function of this Court is merely to determine whether there was evidence, or proper inferences from the evidence, upon which the trial court could find the defendant guilty. For one of the many cases so holding see *Clay v. State,* 211 Md. 577, 128 A. 2d 634.

There was evidence and inferences from evidence that would have justified the court below in arriving at the following conclusions: Harry J. Van Vooren is the owner of a gasoline filling station in Baltimore City. On May 2, 1958, at approximately 10:00 p.m., his station was closed and locked. At about 1:00 a.m. on May 3, he drove past the station and glanced in to see if everything was in order, and he observed two men inside the station, one in the office and the other in the lubrication section. Van Vooren went to a nearby diner for the purpose of calling the police; however, he saw an officer in the diner, and both of them returned to

his station. As he and the officer arrived at the station, two men came out of the front door and fled over the rear fence. A portable radio and a new Sunoco battery had been removed from the filling station as well as all of the cash that was in the cash register. The value of the portable radio was stated to be $15.00, while the selling price of the battery was $26.00. The battery and radio were found seventy-five or one hundred feet in the rear of the filling station, and the cash from the cash register was found in the codefendant's pocket.

The officer pursued the two men. He ordered them to halt, and when they did not, he fired one shot in the air and the appellant's companion thereupon stopped. The appellant, however, did not, and a second shot was fired by the officer which struck the fleeing appellant. The officer found the battery near the feet of the appellant's companion, and also found the portable radio lying nearby. The appellant was rendered unconscious after being hit in the shoulder by the bullet from the officer's weapon, and was found a short time thereafter lying in a gully.

The intruders had gained access into the station by breaking a window pane in the front door, placing their hands therein and unlatching the door.

The appellant, who is unmarried and at the time was unemployed, denied having broken into the station, but admitted being in the vicinity thereof, claiming that he had a bottle of whiskey which he and his companion were drinking at or near the station. He also admitted that he had a rather lengthy criminal record.

The only point of alleged insufficiency of evidence which is seriously pressed by the appellant is that he claims the State failed to prove that he intended to steal goods of the value of one hundred dollars or more. He argues that the value of the battery and radio together was but forty-one dollars and the only coins that were in the cash register were pennies totalling some seventy-seven in number which items, if considered altogether, are still well under the value of one hundred dollars. He claims that the best evidence of what was intended to be stolen was what was actually stolen, and, as the State did not prove he had taken goods of the value of

one hundred dollars, or more, he should have been acquitted. To place such an interpretation upon the statute would mean that in all breakings with intent to steal goods of the value of one hundred dollars, or more, where the intended thief is unsuccessful in his attempted larceny, there would have to be an acquittal no matter how base his motive in the breaking was. This would defeat the very purpose of the statute and render its effect nugatory. He cites the recent case of *Felkner v. State, supra,* as authority for this claim.

The *Felkner* case, however, made no such ruling. Under the peculiar facts of that case, the State's evidence disclosed that the defendants broke into an establishment with the intention of taking a typewriter and some blank checks, the intrinsic value whereof was quite small, though the potential value, after forgeries, was great. In holding that the State had failed to establish a value of the goods intended to be stolen (one hundred dollars or more) sufficient to prove a felonious intention (146 A. 2d at page 429) the Court pointed out that felonious intent was an essential element of burglary at common law and under statutes requiring such intent, and must be proven. The proof, however, *need not be direct but may be inferred from the circumstances.* It was stated that the most conclusive evidence that the breaking was with intent to steal is the larceny itself, though intent to steal may exist and be proven when nothing in fact is taken. The Court stated: "Where the statute measures the degree of the burglary by the value of the goods which were intended to be stolen, the evidence must permit the trier of facts reasonably to infer that it was intended to take goods of that value or more if there is to be a conviction." In the case at bar, we think the evidence fully warranted the trial judge in concluding that the appellant, at the time of the breaking, intended to steal goods of the value of one hundred dollars or upwards. It is true that the articles taken were of comparatively small value, but the rifling of the cash register of its contents—although only petty cash for the following day's business was therein—clearly permitted a finding by the trier of facts that the appellant intended to take all of the money that he could find therein, which distinguishes the instant case from the

*Felkner* case, *supra,* where the State's evidence showed that the defendants entertained a specific intention to take certain definite articles at the time of the breaking.

The appellant makes a further claim that he failed to receive a fair and impartial trial. He bases this claim upon a statement made by the trial judge in ruling upon a motion by the defendant for a directed verdict of acquittal at the close of the State's case. The statement was:

> "Motion is denied. I think it is perfectly clear he [the defendant] was a participant in this burglary, Mr. Weisgal. The officer found him there right in the area of the Sunoco station, he shot him and he fell and he was seen to drop an object nearby where he was shot and fell."

He argues that the presumption that a defendant is innocent remains with him throughout the trial, and these remarks of the trial court conclusively show that the judge had made up his mind that the defendant was guilty before hearing all of the evidence—something that should never occur in the trial of a criminal case as the last witness may raise a reasonable doubt as to the defendant's guilt—and that this constituted prejudicial and reversible error which entitles him to a new trial. He cites two Pennsylvania cases, *Commonwealth v. Richman,* 1 A. 2d 578, and *Commonwealth v. Horn,* 140 A. 2d 847, which held that when a defendant in a criminal case is tried by the court, without a jury, he is entitled to have *all* of the evidence weighed and considered by the trial judge before his guilt or innocence is determined.

If we assume that the cases just cited correctly state the law, we are unable to find anything in the remarks of Judge Sodaro that would amount to prejudicial error. It would, perhaps, have been better for the judge, when he stated, "I think it is perfectly clear he [the defendant] was a participant in this burglary, Mr. Weisgal," to have specifically called attention to something that was implicit in the remark, namely, that he was dealing with a question of whether or not the State had made out a *prima facie* case, and was simply explaining his reasons for overruling the defendant's motion

for a directed verdict. Examining the judge's remarks in this light and in context, we are not convinced that they show any prejudice or bias that would have prevented his giving due weight and consideration to any testimony thereafter presented.

*Judgment affirmed, with costs.*