State v. Frederici.

---

THE STATE v. FRANK C. FREDERICI, Appellant.

Division Two, February 2, 1917.

1. **WIFE ABANDONMENT: Evidence.** In a prosecution of a husband for wife abandonment, he should be permitted to show by cross-examination of her what disposition she made of personal property left in her possession at the time he left her.

2. ————: **Sufficiency of Evidence.** The support of the wife required by the statute, of a husband charged with wife abandonment, must be a reasonable one, taking into consideration the defendant's financial means; and where there was evidence that defendant had deliberately and finally abandoned his wife, that she was destitute and sick when he left her, that she had no.property at the time of the marriage, that in over eight months he had furnished her only $98, that this sum together with the money realized from the sale of some articles left by him with her amounted to only $123, and that this was her only means of support, the question of defendant's guilt or innocence was one for the jury.

266 Mo.—44

State v. Frederici.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Calvin N. Miller,* Judge.

REVERSED AND REMANDED.

*Oliver J. Miller* for appellant.

(1) The court erred in not discharging defendant on his several motions. (a) It is incumbent upon the State to prove beyond a reasonable doubt that the alleged abandonment is without good cause and with criminal intent. State v. Doyle, 68 Mo. App. 219; State v. Loving, 184 Mo. App. 82. (b) Two elements are essential to constitute this offense; the criminal intent of abandonment without cause, and the failure and refusal to provide for the wife. The charge of this offense is not made out when the evidence shows that the wife was living on means provided by the husband. State v. Fuchs, 17 Mo. App. 458; State v. White, 45 Mo. 512; State v. Brunning, 60 Mo. App. 51. (c) The second essential element to make this offense, fails when it is shown that reasonable tenders and offers of support were made. State v. White, 45 Mo. 512. (2) The court erred in excluding relevant and material testimony. It erred in not permitting defendant to cross-examine the prosecuting witness on the question of the disposition of a certain piano. (a) Because it bore directly on question of means left with wife that could be used toward support, and the disposition thereof in a way which would raise the presumption that the wife had sufficient means of support left with her or given to her, by the husband. State v. Fuchs, 17 Mo. App. 461. (b) It erred in not permitting the defendant to state his reason for discontinuing his remittance to his wife on January 25, 1913. This offense is not *malum in se,* but *malum prohibitum,* made so by statute, and evidence in defense tending to show an absence of criminal intent is material and relevant.

*John T. Barker,* Attorney-General, and *James P. Kem* for the State.

(1) The trial court did not err in refusing to discharge the defendant. (a) There was substantial

evidence of the defendant's failure or refusal to provide for and maintain his wife. State v. Weyant, 149 Iowa, 457; State v. Waller, 90 Kan. 829; Burton v. Commonwealth, 109 Va. 800. (b) Whether the defendant acted under a mistake was a question of fact, the disposition of which by the trier of the facts is conclusive on appeal. 1 Bishop's New Criminal Law (8 Ed.), p. 302; Marshall v. State, 49 Ala. 21; Goetz v. State, 41 Ind. 162. (2) The court did not err in excluding irrelevant and immaterial testimony. (a) It did not err in permitting defendant to cross examine the prosecuting witness on the disposition of the piano. (b) The appellant cannot now complain that the court did not permit the defendant to state what he had been advised by his lawyer.

ROY, C.—Defendent was convicted of wife abandonment and sentenced to pay a fine of $500. He appealed to the St. Louis Court of Appeals, where, in an opinion by ALLEN, J., the judgment was reversed and the defendant discharged. NORTONI, J., dissented, deeming the majority opinion contrary to the opinion of this court in Gannon v. Laclede Gaslight Co., 145 Mo. 502, and the cause was therefore certified to this court. The opinions filed in the St. Louis Court of Appeals are reported in 184 S. W. 170.

The parties were married June 29, 1910. The wife had a daughter by a previous marriage. The defendant has no children.

About December, 1910, the defendant purchased a house in St. Louis for $1900, all on time payments. They moved into the house at once, and lived together there until July 4, 1912, on which day defendant abandoned his home, leaving it, and all the property therein in possession of the wife, and leaving her in possession also of some chickens which were kept on the premises, not over fifty in number. Up to that time there had been paid on account of the purchase of the house, interest, taxes and

water-rates ..............................$441.06
For improvements ........................· 187.75
For chicken house ........................... 126.00
For furniture ............................. 392.90
For carpets ................................. 44.18
For household goods ....................... 211.88
For piano (principal) ...................... 201.00
For piano (interest) ....................... 10.12

$1614.89

The wife testified that she paid a portion of those items with her own funds. The defendant testified that the wife had no money, and that he made all those payments. There was still due at the time to the Baldwin Piano Company $64 on the piano.

The defendant worked for a chemical company, and in addition did a collection business. The wife testified that he made from $200 to $250 a month, but he testified that his earnings did not exceed $85 monthly. The wife testified that the defendant at times drank to excess and stayed out two or three nights of each week; that she gave him no cause to leave her; that he would not support her, nor pay the grocery bills; that they quarreled on that account; and that he packed his clothes and left without saying a word.

Mrs. Miller for the State testified that the defendant and his wife seemed to get along pleasantly for a while after their marriage; that the wife was sick about two weeks before defendant left, and that she (witness) was there to care for her; that she never saw the wife mistreat her husband; that defendant went away and came back in ten days, when witness said to him, "Please come back to your wife and do what is right; we all like you, and you have a nice little home here, and you can pay it out and have it in your old age," and that he answered, "I have made up my mind and I will;" that he came back and stayed all night and went away, and after some time came another night, then left and never returned; that he refused to pay any bills and left her destitute and without means for support; that they quarreled about

money matters, and that the wife told him he ought to pay his grocery bills.

The wife testified that the defendant told her that he had "affinities" among the other women.

In August after leaving his wife the defendant sued for divorce, but soon after dismissed his suit. While the suit was pending the court ordered the payment of five dollars a week alimony. The defendant paid three weeks' alimony before the suit was dismissed. The defendant afterwards made such weekly payments of five dollars beginning November 18, 1912, and ending on January 25, 1913. He paid nothing after that. This prosecution was begun March 18, 1913. The defendant testified that he furnished his wife after the separation with money amounting in all to about $98, while she placed it at $65. She testified that she sold a typewriter for $10, a kitchen cabinet for $10, and a bookcase for $5, and that she bought bread with the money. The piano which was in defendant's house when he left home was returned to the Baldwin Company, and a "player piano," the price of which was $725, was put in place of it. Counsel for defendant sought, on cross-examination of the wife, to learn the particulars of that exchange, for the purpose of showing that the old piano was traded in on the new as a payment for $241 thereon. The trial court refused such cross-examination.

Defendant testified that he stopped making his weekly payments because he was informed that his wife had sold the piano for $100. He also testified that he offered the wife $100 for the piano.

The State read in evidence two letters from the defendant to his wife. One was dated July 18, 1912, and directed her to turn the piano over the Baldwin Company, saying that he would not be able to make any more payments on it. The other was dated September 4, 1912, and offered her $100 if she would deed the house to him.

The defendant testified that he left his wife because she made it too disagreeable for him; that he paid his bills; that his wife often locked him out at night; that she called him offensive names and charged him with

running with other women; that she would go through his pockets at night, and that his money would be gone the next day. She testified that she sometimes went through his pockets, but that she had never found anything but car fare.

I. We agree with the St. Louis Court of Appeals that the defendant should have been permitted to cross-examine the wife as to the particulars of the deal by which the first piano was returned to the Baldwin Company and another one put in its place The first piano was the property of this defendant. He had almost finished paying for it. While being tried for the alleged offense of abandoning his wife, it was justly due him that he should be informed as to what disposition she had made of his property. It cannot be foreseen what the disclosures may be on such cross-examination. The facts thus developed may furnish a defense to this prosecution, or may be of such a nature as to convince the triers of fact that the wife was not left by the defendant without sufficient means of support.

Evidence.

II. We are clearly of the opinion that the question of the guilt or innocence of the defendant under the facts in evidence was one for the jury. There was an abundance of evidence in support of every point essential to the prosecution. It shows that he had deliberately and finally abandoned her; that she was destitute and sick when he left her. He testified that she had no property. That showing, once made, is good until it is rebutted. He did not claim to have furnished her with more than $98 from July 4, 1912, to March 18, 1913. That put with the $25 realized by her on the sale of articles of his amounts to $123, which was the only means of subsistence she had during a period of eight and a half months.

Question for Jury.

In State v. Maher, 77 Mo. App. 401, the court in effect held that the support required by the statute must be a reasonable one taking into consideration the defendant's financial means. It was for the triers of fact to say whether the defendant had made a satisfactory showing

in that respect. Those triers of fact were not bound to take as·true the defendant's statement that he had been informed that his wife had sold the piano for $100.

It was said in Gannon v. Laclede Gaslight Co., supra:

"The converse of that proposition, which was assumed by the trial judge in this, as in the Reichenbach case (Reichenbach v. Ellerbe, 115 Mo. 588), that when either party to a controversy submits testimony (other than written instruments that call for the court's construction of their meaning and import) to sustain his or her burden of proof, the other party, though offering nothing to contradict it, is entitled to have the jury pass upon the whole case, and to determine the credibility of the witnesses and the weight to be given to their testimony, has from our earliest reported cases been often asserted with much positiveness."

That proposition is affirmed as late as Johnson v. Grayson, 230 Mo. l. c. 394, and by ALLEN, J., in Tierney v. United Railways Co., 185 Mo. App. l. c. 724.

Because of the error mentioned in the first paragraph of this opinion the judgment is reversed and the cause is remanded for a new trial.

*White,·C.*, concurs.

PER CURIAM:—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All of the judges concur.